**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON**

**CIVIL ACTION NO. 25-169-DLB-CJS**

**LUIS ALBERTO MOYAO ROMAN**                                    **PETITIONER**

**v.**                    **MEMORANDUM OPINION AND ORDER**

**SAM OLSON, et al.,**                                          **RESPONDENTS**

\* \* \* \* \* \* \* \* \* \*

**I.   INTRODUCTION**

This matter is before the Court on Petitioner Luis Alberto Moyao Roman's Petition for Writ of Habeas Corpus (Doc. # 1). Respondents[1] having filed their Responses (Docs. # 3 and 5), and Petitioner having filed his Reply (Doc. # 6), this matter is now ripe for review. For the reasons that follow, the Court will **grant** the Petition.

**II.  FACTUAL AND PROCEDURAL BACKGROUND**

Petitioner Moyao Roman was born on August 22, 1990, and is a citizen of Mexico. (Docs. # 1 at 11 and 1-2 at 1). Petitioner entered the United States in or around 2002, when he was approximately twelve years old. (Doc. # 1 at 11). He has resided in the United States for more than twenty-three years. (*Id*.). On August 31, 2025, Petitioner

---

[1] Petitioner files this action against Sam Olson, Acting Field Office Director of Enforcement and Removal Operations ("ERO"), Chicago Field Office, Immigration and Customs Enforcement ("ICE"); Kristi Noem, Secretary, U.S. Department of Homeland Security ("DHS"); Pamela Bondi, U.S. Attorney General; DHS; and the Executive Office for Immigration Review ("EOIR") (collectively, "Respondents"). Petitioner additionally filed this action against Marc Fields, Jailer, Kenton County Detention Center. Respondent Fields filed his Response, arguing that he is not Petitioner's legal or immediate custodian. (Doc. # 5). This is not disputed by Petitioner, and therefore, the Court will address only the Response filed by the other listed Respondents. (*See* Doc. # 3).

1

was arrested by U.S. Immigration and Customs Enforcement ("ICE").  (*Id.*).  He was originally detained at the Clay County Justice Center in Brazil, Indiana, but was eventually transferred to the Kenton County Detention Center, which is within the Eastern District of Kentucky.  (*Id.*).  Petitioner is subject to removal proceedings pending before the Memphis Immigration Court, with a final hearing scheduled for December 19, 2025.  (*Id.* at 12).

On October 24, 2025, Petitioner, through counsel, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 (Doc. # 1).  Petitioner claims that he is being improperly detained by ICE at the Kenton County Detention Center in Covington, Kentucky.  (*Id.* at 13).  Among other things, he requests that this Court order his immediate release.  (*Id.* at 14).  On October 29, 2025, this Court directed the Respondents to respond to Petitioner's pleading.  (Doc. # 2).  With Respondents having filed their Responses (Docs. # 3 and 5), and Petitioner having recently filed his Reply (Doc. # 6) this matter is now ripe for the Court's review.

### III. ANALYSIS

Moyao Roman's Petition alleges violations of the Immigration and National Act ("INA") and the Fifth Amendment's Due Process Clause.  (Doc. # 1 at 12).  Petitioner argues that as a non-citizen residing in the United States at the time of his apprehension, he is subject to the discretionary detention provisions in 8 U.S.C. § 1226(a).  (*Id.* at 10-11).  Respondents disagree, asserting that 8 U.S.C. § 1225(b)(2)(A) is the applicable statute, which would mandate detention.  (Doc. # 3 at 5).  Petitioner seeks immediate release from custody, or, in the alternative, a bond hearing; and he asks this Court to declare that 8 U.S.C. § 1226(a)—and not 8 U.S.C. § 1225(b)(2)(A)—is the appropriate statutory provision.  (Doc. # 1 at 15).

### A. Relevant Framework

At its core, habeas is "a remedy for unlawful executive detention" *Munaf v. Geren*, 553 U.S. 674, 693 (2008), granted to "every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004). The "typical remedy for such detention is, of course, release." *Munaf*, 553 U.S. at 693. Such relief "may be granted by the ... district courts ... within their respective jurisdictions." 28 U.S.C. 2241(a). The Supreme Court has recognized that habeas relief extends to noncitizens. *See Rasul v. Bush*, 542 U.S. 466, 483 (2004) ("[Alien] Petitioners contend that they are being held in federal custody in violation of the laws of the United States ... Section 2241, by its terms, requires nothing more."). Enacted in 1952, the INA consolidated previous immigration and nationality laws, now containing "many of the most important provisions of immigration law." U.S. Citizenship and Immigration Services, *Immigration and Nationality Act* (July 10, 2019), https://www.uscis.gov/laws-and-policy/legislation/immigration-and-nationality-act#:~:text=The%20Immigration%20and%20Nationality%20Act,the%20U.S.%20House%20of%20Representatives. Specifically, Congress established two statutes, codified in Title 8, which govern detention of noncitizens pending removal proceedings—8 U.S.C. §§ 1225 and 1226.

The first statute, 8 U.S.C. § 1225 titled "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing" states, in pertinent part,

    **(b)**     **Inspection of applicants for admission**

    **(2)**     **Inspection of other aliens**

    **(A)**     **In general**

> Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229(a) of this title.

8 U.S.C. § 1225(b)(2)(A).  Important to note, for purposes of this provision, "an alien who is an applicant for admission" is defined as an "alien present in the United States who has not been admitted or who arrives in the United States."  8 U.S.C. § 1225(a)(1).

The second provision at issue, 8 U.S.C. § 1226, titled "Apprehension and detention of aliens" reads

> **(a) Arrest, detention, and release**
>
> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General—
>
> (1)   May continue to detain the arrested alien; and
>
> (2)   May release the alien on—
>
> (A)   Bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General . . .

8 U.S.C. § 1226(a).

Section 1226(c) of the INA was amended by Congress in January 2025 with the enactment of the Laken Riley Act, which added a new subsection under Section 1226(c) which requires certain mandatory detentions.  Pub. L. No. 119-1, § 2, 139 Stat. 3, 3 (2025).  The amendment added a two-step process, in which the Attorney General must detain a noncitizen if

> (1) they are inadmissible because they are in the United States without being admitted or paroled, obtained documents or admission through misrepresentation or fraud, or lacks valid documentation and

4

> (2) is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person.

*Barrera v. Tindall*, No. 3:25-cv-541-RGJ, 2025 WL 2690565, at *3 (W.D. Ky. Sep. 19, 2025) (quoting U.S.C. §§ 1226(c)(1)(E)(i)-(ii)).

The distinction between 8 U.S.C. §§ 1225 and 1226 is relevant to Moyao Roman's Petition. Pursuant to 8 U.S.C. § 1226(a), noncitizens who are arrested and detained have been granted by Congress the right to request a bond hearing before an Immigration Judge. Conversely, under 8 U.S.C. § 1225(b)(2)(A), all aliens deemed to be applicants for admission *must* be detained. As noted *supra*, Petitioner, a noncitizen who has lived in the United States for over 23 years, has been detained by ICE and is being held at the Kenton County Detention Center. The question, then, is whether Petitioner must be detained under § 1225, or whether he has the right to request a bond hearing pursuant to § 1226.[2]

### B. Statutory Interpretation

With the parties disagreeing about which statute applies to Petitioner's detention, the issue before the Court is clearly one of statutory interpretation.[3] In interpreting statutes, district courts must "use every tool at their disposal to determine the best reading

---

[2] The Court notes that the matter before this Court is *not* whether the executive branch has the authority to direct ICE/DHS to detain and deport noncitizens. The question before the Court is whether those noncitizens—specifically Petitioner Moyao Roman—are entitled to a bond hearing before an immigration judge prior to their removal hearing pursuant to 8 U.S.C. § 1226(a) or must be mandatorily detained pursuant to 8 U.S.C. § 1125(b)(2)(A).

[3] The Court notes that there is no guidance from the Sixth Circuit on this issue and the issues raised in the instant petition are of first impression within the Eastern District of Kentucky. As such, to the extent necessary, the Court look to other district courts for guidance.

of the statute." *Loper Bright Enter. v. Raimondo*, 603 U.S. 369, 400 (2024). Statutes must be given their "ordinary, contemporary, common meaning" *Walters v. Metro Edu. Enters., Inc.*, 519 U.S. 202, 207 (1997), while also being read "in their context and with a view to their place in the overall statutory scheme." *Roberts v. Sea-Land Servs., Inc.*, 566 U.S. 93, 101 (2012).

The Court first turns to the plain language of the statute. The Court begins by looking at the first words one may read—the Title. A "[c]ourt gives each and every word meaning, and this includes the title." *Barrera*, 2025 WL 2690565, at *4. While section headings are not dispositive, "they are instructive and provide the Court with the necessary assurance that it is at least applying the right part of the statute in a given circumstance." *Lopez-Campos v. Raycraft*, No. 2:25-cv-12486, 2025 WL 2496379 at *8 (E.D. Mich. Aug. 29, 2025) (citing *Dubin v. United States*, 599 U.S. 110, 120-21 (2023) ("This Court has long considered that the title of a statute and the heading of a section are tools available for the resolution of a doubt about the meaning of a statute.")). Section 1225 is titled "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for a hearing[.]" Section 1226 is titled "apprehension and detention of aliens" with a focus on "arrest, detention, and release[.]" Thus, the text of the titles indicate that § 1225 governs "arriving" noncitizens, while § 1226 focuses on the apprehension and detention of those noncitizens already in the country.[4]

Section 1225(a)(1) states that an "applicant for admission" is "an alien present in the United States who has not been admitted or who arrives in the United States." Under

---

[4] This is supported by the text of § 1225, which focuses on limited and specific methods of entry, for example, via "crewman" or "stowaways" leading to the conclusion that "Section 1225 is much more limited in scope than the United States asserts." *Barrera*, 2025 WL 2690565, at *4.

6

§ 1225(b)(2) any applicant for admission who "is not clearly and beyond a doubt entitled to be admitted" must be detained. Respondents take the position that for a noncitizen to qualify as an "applicant for admission" one must merely be (1) present in the United States, and (2) not be admitted by an immigration officer. (Doc. # 3 at 7). Thus, Respondents contend that, despite Petitioner being in the United States for over twenty-three years he is still "seeking admission" because any noncitizen who is "[s]imply . . . in the United States without having been admitted . . . is actively seeking admission into the United States." (*Id*. at 9). Respondents' interpretation of § 1225(b)(2)(A), therefore, would call for mandatory detention of *every* noncitizen present in the United States who has not been lawfully admitted. The Court finds this interpretation much too broad. *See Maldonado v. Olson*, No. 25-cv-3142, 2025 WL 2374411, at *12 (D. Minn. Aug. 15, 2025) ("[A]ccepting Respondents' one-size-fits-all application of 1225(b)(2) to all aliens, with no distinctions, would violate fundamental canons of statutory construction.").

Further analysis of the text highlights that Respondents misconstrue the term "seeking admission." Respondents argue that a noncitizen who is merely present in the United States is "actively seeking admission." (Doc. # 3 at 9). The use of the present progressive term "seeking" "implies action." *Barrera*, 2025 WL 2690565 at *4; *see also Diaz v. Marinez,* 792 F. Supp. 3d. 211, 218 (D. Mass. 2025) ("[T]he phrase 'seeking admission[,]' [though] undefined in the statute[,] [] necessarily implies some sort of present-tense action."). It could not be said that Petitioner, a noncitizen who was residing here for over twenty-three years was "actively seeking admission." Numerous district courts have come to the same conclusion. *See Barrera*, 2025 WL 2690565, at *4 ("Noncitizens who are present in the country for years, like [petitioner] who has been here

7

20 years, are not actively 'seeking admission.'"); *Lopez-Campos*, 2025 WL 2496379, at *7 ("There is no logical interpretation that would find that Lopez-Campos was actively 'seeking admission' after having resided here, albeit unlawfully, for twenty-six years."); *Ochoa Ochoa v. Noem*, No. 25-cv-10865, 2025 WL 2938779, at *6 (N.D. Ill. Oct. 16, 2025) ("In agreement with other district courts, this court rejects Respondents' expanded reading of 1225(b)(2) and the term "seeking admission.").  Moreover, to adopt Respondents' interpretation of the verb "seeking" would render the phrase "seeking admission" "mere surplusage by equating it to 'applicant for admission.'" *Ochoa Ochoa*, 2025 WL 2938779, at *6.  The Court declines to adopt such an expansive reading.[5]

The Court now turns to the plain language of § 1226, which controls the "apprehension and detention of aliens."  Section 1226(a) permits a bond hearing if an "alien" who was "arrested and detained" on a "warrant issued by the Attorney General" is "pending a decision on whether the alien is to be removed from the United States."  The plain meaning of the statute is clear and applicable to Petitioner—an alien, who was arrested and detained by ICE, and is currently pending removal proceedings before the Memphis Immigration Court.  (Doc. # 1 at 12).  This is further bolstered by the record. The Notice to Appear, issued by DHS, checked the box labeled "You are an alien *present* in the United States who has not been admitted or paroled" rather than checking the box labeled "*arriving* alien." (Doc. # 1-2 at 1) (emphasis added).  This supports this Court's conclusion, and reaffirms the Supreme Court's determination in *Jennings v. Rodriguez,* that § 1226(a) applies to aliens already present in the United States, while § 1225(b)(2)(A)

---

[5] The Court notes that in their Response, Respondents repeatedly reference *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216, 220-21 (BIA 2025), an opinion from the Board of Immigration Appeals.  Pursuant to the recent Supreme Court decision in *Loper Bright*, courts "need not defer to any agency interpretation of law just because a statute is ambiguous."  603 U.S. at 412-413.

applies to arriving aliens. 583 U.S. 281, 298, 303 (2018). The Respondents' new post hoc position is simply "impermissible." *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 22 (2020) (holding that "[t]he basic rule is clear: [a]n agency must defend its actions based on the reasons it gave when it acted," not on "impermissible post hoc rationalizations.").

Most compelling for this Court is the addition of the Laken Riley Act, signed into law in January 2025. The Laken Riley Act, which was incorporated into § 1226(c), provides that noncitizens who have been charged with, convicted of, or admitted to committing various listed crimes, are subject to mandatory detention. 8 U.S.C. § 1226(c). If, as Respondents argue, Congress had intended for § 1225 to govern all noncitizens who are present in the country, regardless of when or where they were detained, then why did Congress even bother passing that legislation. The addition of the Laken Riley Act would be superfluous. The Laken Riley Act added a mandatory detention requirement, "in an otherwise discretionary Section." *Barrera*, 2025 WL 2690565, at *4. As other courts have noted,

> [i]f § 1225(b)(2) already mandated detention of any alien who has not been admitted, regardless of how long they have been here, then adding § 1226(c)(1)(E) to the statutory scheme was pointless and this Court, too, 'will not find that Congress passed the Laken Riley Act to 'perform the same work' that was already covered by § 1225(b)(2).

*Lopez-Campos*, 2025 WL 2496379, at *8 (quoting *Maldonado*, 2025 WL 237441, at *12); *see also id*. ("Respondents' interpretation of the statutes would render [the Laken Riley Act] superfluous); *Matinez*, 792 F. Supp. 3d. at 221 ("[I]f, as the Government argue[s] ... a non-citizen's inadmissibility were alone already sufficient to mandate detention under section 1225(b)(2)(A), then the 2025 amendment would have no effect. This is a

9

presumptively dubious result."); *Selvin Adonay E.M. v. Noem et al*, No. 25-cv-3975, 2025 WL 3157839, at *6 (D. Minn. Nov. 12, 2025) ("the presumption against superfluity is at its strongest because the Court is interpreting two parts of the same statutory scheme, and Congress even amended the statutory scheme this year when it passed the Laken Riley Act."). This Court agrees with its sister courts. Respondents fail to elaborate when, if § 1225(b)(2) applies to *every single* noncitizen's detention proceeding, § 1226 would ever, if at all, come into play.[6] The Court finds it difficult to conceive of a situation in which Congress would enact an insignificant superfluous statute for no other reason than to add words to the page. *See Stone v. I.N.S.*, 514 U.S. 386, 397 (1995) ("When Congress acts to amend a statute, we presume it intends its amendment to have real and substantial effect.").

Pertinent legislative history reinforces the Court's conclusion. *See Loper Bright*, 603 U.S. at 386 ("[T]he longstanding practice of the Government—like any other interpretive aid—can inform [a court's] determination of what the law is."). Enacted in 1952, the INA "distinguished between aliens physically arriving in the United States and those who had entered the Country." Library of Congress, *Immigration Detention: A Legal Overview* (Sep. 16, 2019), https://www.congress.gov/crs-product/R45915#_Ref17891326. In 1996, Congress enacted the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") which focused on whether the

---

[6] Respondents make various public policy arguments on why noncitizens who have entered the country without detection should not be treated more favorably than those who "entered lawfully." (Doc. # 3 at 12). While valid arguments, the text, as clearly indicated above, "does not currently reflect such public policy considerations." *Maldonado*, 2025 WL 2374411, at *12. "Rather, such arguments may be made to Congress if Respondents would like to amend or repeal § 1225 or § 1226, but such policy arguments are not reflected in the Laken Riley Act amendment … passed only a few months ago." *Id*.

10

noncitizen "had been lawfully admitted into the country by immigration authorities." *Id*. Since the IIRIRA's enactment "the statutory framework governing detention has largely remained constant." *Id.* In applying the INA to detention proceedings, the Government has, for the past thirty years, consistently applied § 1226(a). It was not until July of 2025 when DHS/ICE announced a new policy, titled "Interim Guidance Regarding Detention Authority for Applicants for Admission" where it deemed all persons who entered the United States without inspection "applicants for admission" under § 1225, that the Government changed course. U.S. Customs and Border Protection, *Detention of Applicants for Admission*, (Sep. 18, 2025) https://www.cbp.gov/document/foia-record/detention-applicants-admission; *see also Lopez-Campos,* WL 2496379 at *5 ("For the past 30 years, the Government has applied Section 1226(a)[.]" It is only "now that . . . they want the Court to declare that the application of Section 1226(a) is incorrect."). This sudden change contradicted the long-established understanding that § 1225(b) "applies primarily to aliens seeking entry into the United States" while § 1226(a) "applies to aliens already present in the United States." *Jennings*, 583 U.S. at 298, 303; *see also id*. at 288 ("Section 1226(a) sets out the default rule for those aliens [already present in the United States.]"). Therefore, the legislative history reflects a longstanding practice of applying § 1226(a) to noncitizens already residing in the country.

"The plain language of the statutes, the overall structure, the intent of Congress, and over 30 years of agency action make clear that Section 1226(a) is the appropriate statutory framework … for noncitizens who are already in the country and facing removal." *Lopez-Campos*, 2025 WL 2496397, at *5. Therefore, the Court finds that Mayao Roman is not subject to § 1225(b)(2)(A). Rather, the facts of the case make clear that he falls

11

under § 1226(a).[7]  Accordingly, his Petition requesting bond, or in the alternative, a hearing, is **granted**.

### C. Due Process

Because the Court has concluded that § 1226(a) is the appropriate statutory framework to apply to Petitioner, the Court must now determine whether his current detention violates his Due Process rights.  Respondents did not address this issue in their Response.

The Fifth Amendment states, in pertinent part, that no person shall be "deprived of life, liberty, or property, without due process of law[.]"  U.S. Const. Amend. V.  The Supreme Court has repeatedly held that the Due Process Clause extends to all persons, regardless of citizenship status.  *See A.A.R.P. v. Trump*, 605 U.S. 91, 94 (2025) ("[T]he Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." (quoting *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025))).  To determine whether a detainee's due process rights have been violated, courts apply a three-part balancing test:

> (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the United States' interest, including the function

---

[7]  The Court acknowledges that at least one other district court has reached a different conclusion.  *See, e.g., Mejia Olalde v. Noem et al.*, No. 1:25-cv-00168-JMD, 2025 WL 3131942 (E.D. Mo. Nov. 10, 2025).  In that case, the court found that the alien there was an applicant for admission because the alien was present in the United States and had not been admitted.  For that reason, the court in *Mejia Olalde* found that the alien was subject to the mandatory detention provision in section 1225(b)(2)(A).  For the reasons set forth in this opinion, namely, the plain language of the both statutes, their overall structure, the intent of Congress, and over 30 years of agency action make clear that Section 1226(a) is the appropriate statutory framework for noncitizens who are already in the country and facing removal, the Court disagrees with decision in that case.

involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge*, 424 U.S. 319, 321 (1976).

It is undisputed that Petitioner has a cognizable private interest in avoiding detention without an opportunity for a bond hearing. *See Hamdi*, 542 U.S. at 531 (affirming "the fundamental nature of a citizen's right to be free from involuntary confinement by his own government without due process of law[.]"). Second, the risk of erroneous deprivation of that interest is high if he is not afforded a detention hearing. As to the third factor, Respondents have not put forth any argument whatsoever advocating for the United States' interest. The Court, on its own, concludes that the United States likely has a strong interest in immigration proceedings, but certainly, the "existing statutory and regulatory safeguards" which this Court discussed at length about above, "serve the governmental interest in public safety." *Barrera*, 2025 WL 2690565, at *7 (quoting *Günaydin v. Trump*, No. 25-cv-01151, 2025 WL 1459154, at *10 (D. Minn. May 21, 2025)). Accordingly, all three factors weigh in favor of Petitioner. As other courts have concluded, Petitioner's detention without a bond hearing violates the due process rights afforded to him by the Fifth Amendment and he is therefore entitled to an individualized custody determination.

Accordingly, **IT IS ORDERED** as follows:

(1)   Petitioner's Petition for Writ of Habeas Corpus (Doc. # 1) is **GRANTED**;

(2)   Respondents are **ORDERED** to **immediately release** Petitioner, or in the alternative, provide him with a **bond hearing** under 8 U.S.C. 1226(a) **within seven (7) days of the date of this order**; and

(3) Respondents shall file a Status Report with this Court **on or before December 1, 2025**, to certify compliance with this Order. The Status Report shall include when the bond hearing occurred, if bond was granted or denied, and if denied, the reasons for that denial.

This 24th day of November, 2025.



Signed By:
David L. Bunning
Chief United States District Judge

G:\Judge-DLB\DATA\ORDERS\Cov2025\25-169 order granting writ of habeas.docx

14